UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| JAMES FREDERICK HEGEL, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:14-CV-310-RLJ-MCLC |
| | ) | |
| TAMMY FORD, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

# **MEMORANDUM OPINION**

In June of 2009, a jury in the Criminal Court for Sullivan County, Tennessee, convicted James Frederick Hegel ("Petitioner") of one count of child rape and one count of incest [Doc. 1 p.2]. In November of 2009, Petitioner was sentenced to nineteen years for the child rape conviction and a consecutive three years for the incest conviction, for a net sentence of twenty-two years' imprisonment [*Id.*]. Petitioner filed this pro se application for a writ of habeas corpus under 28 U.S.C. § 2254, in the Western District of Tennessee, challenging the legality of his confinement and raising two main grounds for relief [*Id.* at 4-21].

After the case was transferred to this Court [Docs. 7-8], Warden Tammy Ford filed a response to the application, asserting that relief is not warranted with respect to Petitioner's claims [Doc. 16]. In support of her position, Respondent submitted a notice of filing with attached copies of the state court record [Doc. 17, Addenda Nos. 1-29]. Petitioner has not filed a reply to

---

[1] Because the proper respondent in a habeas corpus case is the state officer having custody of a petitioner, *see* Rule 2, Rules Governing Section 2254 Cases In The United States District Courts, the Court has substituted the correct respondent, i.e., Tammy Ford, the Warden of the Whiteville Correctional Facility, Petitioner's present place of confinement, for Warden Cherry Lindamood, the originally named Respondent.

Respondent's answer, and this case is ready for disposition. For reasons that appear below, this petition will be **DENIED**.

I.  **PROCEDURAL HISTORY**

On July 27, 2011, Petitioner's judgment was affirmed by the Tennessee Court of Criminal Appeals ("TCCA"). *State v. Hegel*, No. E2010–00747–CCA–R3CD, 2011 WL 3198188 (Tenn. Crim. App. July 27, 2011). Petitioner did not seek further review in the Tennessee Supreme Court. Instead, Petitioner challenged his conviction under the Tennessee Post-Conviction Procedure Act, by means of filing on July 26, 2012, a petition for post-conviction relief. *Hegel v. State*, No. E2013–01630–CCA–R3–PC, 2014 WL 2106703, at *3 (Tenn. Crim. App. May 19, 2014), *perm. app. denied* (Tenn. 2014). Petitioner was unsuccessful in obtaining collateral relief, and there followed this instant timely § 2254 habeas corpus application.

II. **FACTUAL BACKGROUND**

The following factual recitation is excerpted from the TCCA's post-conviction opinion, *Hegel*, 2012 WL 26002, at *1-2.

> The then twelve-year-old victim testified that he was born on March 5, 1997, and that he knew the difference between the truth and a lie. In November and December 2002, the victim lived in an apartment in Tennessee with his mother and [the Petitioner]. The victim said the abuse started when [the Petitioner] told him that the victim's mother would not have sex with [the Petitioner] and that [the Petitioner] wanted to have sex with the victim. The victim said that [the Petitioner] "put his wiener up my butt and stuff, and made me rub his wiener and squeeze it and stuff," that [the Petitioner] "tried to make white suff [sic] come out of his wiener ... and stick it in my mouth," and that [the Petitioner] touched the victim's penis. The victim said that [the Petitioner] also "stuck his finger up my butt" and that [the Petitioner's] finger and penis were "really big and it really hurt." When asked what time of year the incidents occurred, the victim said, "Christmas I was four, around there. Yeah, four." The State asked the victim if the abuse also happened when he was five years old, and the victim said, "It was—in Christmas it was when I was four, when I was five." The victim acknowledged that

the abuse happened near Thanksgiving and Christmas in 2002.

…

The victim testified that the abuse occurred in the bathroom after his mother went to bed. The [Petitioner] promised the victim money in exchange for the sexual acts and told the victim not to tell the victim's mother. The State asked the victim how often the abuse occurred, and the victim said, "It started with four at a day and then keep going, keep doing four, four, four, four at a day.... It was four things a day. It was my daily routine." He said the abuse continued until his mother left [the Petitioner]. The victim acknowledged that he had been in three mental hospitals, that he lied to the doctors and nurses at the hospitals, and that he lied to them in order to get his way and get what he wanted. The victim said that he began having nightmares when the abuse started, that he was still having nightmares, and that "I can't control it."

....

The victim testified that the abuse started when he was in the first grade and that it "[m]ade me a miserable life." He said Camelot was the last mental hospital he was in, that he learned to tell the truth while he was in Camelot, and that he lied previously because "I was too afraid to tell the truth when I was little. Really I feel like I still am." He said that someone caught him engaged in a sexual act with another boy and that his mother found out about the act. He stated, "And that's when my mom figured out who taught [me]." He denied that he accused [the Petitioner] of sexually abusing him in order to get out of trouble over the incident with the boy, and he acknowledged that his mother and the prosecutor helped him prepare to testify.

....

Detective Adkins testified that she met with [the Petitioner] in Wilmington, North Carolina, on October 19, 2007, and that [the Petitioner] was not in custody. She said she explained the victim's allegations to [the Petitioner] and that he gave a statement. She read [the Petitioner's] written statement to the jury. The statement provides, in relevant part, as follows:

> I have only put my penis in [the victim's] ... butt one time. It was when we lived at Cabana Apts in Kingsport. I think it was in 2002, when [the victim] was 5 or 6 years old, probably in [k]indergarten.... The time I put my penis in [the victim's] butt was probably winter time because I soak in the bathtub in winter & I shower in the summer & warm weather. It had to be between the middle of 2001 & [Aug.] 8, 2003 because

3

> [that's] when we lived there. [The victim's mother] & I had gotten into an argument & I had been drinking. I drank often in Tennessee. I got in the bathtub to soak & [the victim] got in there with me. I have [e]rectile dysfunction & I've had it since I was 25 yrs old. I'm 38 now. I haven't been able to ejaculate in many years.... The warm water & him moving around made my penis start to get hard. It was so unusual for that to happen, it just felt good. I didn't plan on it, but with [the victim] sitting on my lap & my penis getting hard, I put it in his butt. [The victim] started moving around [on] my penis but I didn't put it all the way in. I only put it in part of the way & it didn't last any more than a minute-probably only 30 seconds. I realized it wasn't right so I stopped....
>
> There was one time I put my finger in [the victim's] butt.... [The victim] had been there at the campground & was filthy. I took him home and scrubbed him but I wasn't in the tub. It was [summer] right before we moved to N.C [.] (Summer, 2003). [The victim's] butt was raw so I stuck my finger in his butt to [c]lean him. My finger barely went in to the first digit if that far. It hurt him because his butt was raw. When I put my penis in [the victim's butt], it did not bleed. He said, "Oh" like it hurt, but he didn't cry or anything. When my finger went in his butt, it was only like the nail part to clean him. I love [the victim] like a dad & I am not sexually attracted to him.

*Hegel*, 2014 WL 2106703, at *1–2.

On this evidence, the Sullivan County Criminal Court jury convicted Petitioner of child rape and incest.

## III. DISCUSSION

Petitioner's § 2254 application lists eleven claims for relief. The first ten claims present various attorney shortcomings that, according to Petitioner, constitute ineffective assistance of counsel [Doc. 1 at 2-16], and the last claim asserts a trial court sentencing error [*Id.* at 17-20]. The

4

Warden argues, in her answer, that Petitioner has procedurally defaulted all but three ineffective assistance claims [Doc. 16 at 23-24]. As to these three claims, Respondent argues that Petitioner is not entitled to relief under the review standards set forth in 28 U.S.C. § 2254, which impose a "highly deferential standard for evaluating [the] state-court rulings" rejecting those claims on the merits, [*Id.* at 22, 24-29]. Petitioner's last claim for relief, so argues Respondent, is not properly before the Court because it is based on state law, rather than on federal constitutional law [*Id.* at 29-30].

The Court agrees with Respondent concerning Petitioner's entitlement to habeas corpus relief and, for the reasons that follow, will **DENY** the petition and **DISMISS** this case.

The Court first addresses the ineffective assistance claims that Respondent maintains have been procedurally defaulted.

    **A.**    **Ineffective Assistance**

        **1.**    **Procedural Defaulted Claims (Claims Nos. 1-3, 5-7, 10)**

Petitioner contends that counsel was ineffective for failing to: object to the introduction of evidence of prior bad acts (Claim 1) and child sexual abuse syndrome (Claim 2); object to prosecutorial misconduct (Claim 3); introduce discovery evidence (Claim 5); present a proper closing argument and perform effective cross-examination (Claim 6); prepare for trial properly (Claim 7); and raise all issues on appeal (Claim 10). Respondent Warden asserts a procedural default defense to all above claims [Doc. 16 at 23-24].

A state prisoner who petitions for habeas corpus relief must exhaust his available state court remedies by presenting his federal habeas claim first to the state courts for consideration. 28 U.S.C. § 2254(b)(1). A claim is exhausted fully if it has been pursued at each level of state court review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47

(1999). A prisoner who has failed to present a federal claim to all levels of the state courts and who is barred by a state procedural rule from returning with his claim to those courts has committed a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A petitioner who shows cause and prejudice or actual innocence can overcome the procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 496 (1986).

As Respondent correctly indicates, none of the above ineffective assistance claims were raised during Petitioner's post-conviction appeal. Respondent thus argues that the claims have not been exhausted completely and are subject to a finding of procedural default.

As the Court has observed, Petitioner did not respond to Respondent's answer in which she asserted procedural default, and he, consequently, has not argued or shown that he presented these claims to the state courts before raising them in this federal habeas court. The Court has independently reviewed the state court record and does not find that Petitioner submitted these claims to the TCCA in his post-conviction appeal [Addendum 21 at 1, 33-39, Petr.'s Post-Conviction Br.]. Petitioner has offered nothing to show cause and prejudice, and his procedural default forecloses federal review of these seven claims.

### 2. Adjudicated Claims (Claims 4, 8-9)

Adjudicated claims are evaluated under the review standards contained in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, which instruct a court considering a habeas claim to defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. §

2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *See id*. at 411; *see also Harrington v. Richter*, 562 U.S. 86,102 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington*, 562 U.S. at 102). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### a. Law on Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance, a petitioner must show that a deficient performance on the part of counsel resulted in prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. Petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from

counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Thus, it strongly is presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

When considering prejudice, a petitioner must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. A reasonable probability "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted).

Finally, petitioners who assert claims of "ineffective assistance of counsel under *Strickland* have a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). "[W]hen a federal court reviews an ineffective-assistance claim brought by a state prisoner, the question is not simply whether counsel's actions were reasonable, 'but whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 105).

      **b.     Analysis**

          **i.     Failure to Request a Continuance (Claim 4)**

As background for this claim, Petitioner maintains that the victim's voluminous medical record was disclosed to the defense some ten days before trial [Doc. 1 at 7-8]. Counsel's pretrial motion for a continuance to permit him more time to review the record was entertained by the trial court at a hearing.[2] The prosecution objected to the motion, claiming that the victim's medical

---

[2] The TCCA noted that the record in the post-conviction appeal did not contain the motion

files contained nothing beneficial to Petitioner, that the motion was a "witch hunt," and that the State had provided Petitioner those records in compliance with the rules of discovery. At the hearing, trial counsel told the trial court that he could read the files in the days remaining before trial. Ultimately, the trial court determined that the medical records had been handed over to the defense appropriately and, according to Petitioner's § 2254 application, denied the defense's motion to continue.[3]

Petitioner maintains that contrary to the State's assurances to the trial court, the records contained information that would have harmed the prosecution's case. More specifically, Petitioner claims that the records encompassed a police report that disclosed that the victim and his mother had had an altercation, during the course of which the victim rammed a sword through a door. The altercation resulted in the police transporting the victim to a mental hospital.

The records also contained case notes that would have shown that the victim had been caught engaging in a sexual act with an unnamed boy. Petitioner speculates that counsel could have discovered the identity of the unnamed boy involved in the purported sexual encounter with the victim, had counsel used a private investigator to delve into the incident. Because counsel did not have the necessary information to discredit the State's proof and impeach the State's witnesses, impliedly because counsel did not have enough time to read and absorb the victim's medical

---

to continue and the transcript of the hearing but concluded that testimony provided by Petitioner and his counsel at the post-conviction hearing indicated that a pretrial hearing was held on the motion. *Hegel*, 2014 WL 2106703, at *6 n.1.

[3] The state court record does not support that the trial court denied the motion to continue and, instead, shows that counsel withdrew the motion to continue. *Hegel*, 2014 WL 2106703, at *3 (iterating that Petitioner testified that "Counsel filed a motion to continue to allow sufficient time to review the materials but withdrew that motion prior to trial after 'agree [ing]' with the court that he had enough time to review them").

9

records, Petitioner was convicted of two of the counts charged against him [*Id.* at 8].

With two exceptions, this claim was presented to the TCCA during Petitioner's post-conviction appeal.[4] In reviewing this claim and all other such claims, the TCCA first cited to *Strickland* and to state court cases that encapsulate *Strickland*'s principles, as containing the rules that govern claims of ineffective assistance. Therefore, the state court decisions on the ineffective assistance is not contrary to the well established Supreme Court precedent.

The TCCA then set forth the underlying facts, stating that counsel obtained the victim's medical records about ten days prior to trial and moved to continue to trial so that he could review those records. Counsel withdrew the motion several days later and the trial began as scheduled. During the post-conviction hearing, counsel indicated that he believed that he had had adequate time to review the records and to prepare for trial and that, with the exception of a note in the file indicating that the victim had engaged in a prior sexual act with another boy, the information in the records would not have been relevant or admissible at trial, in counsel's opinion. Counsel further indicated that he had gone through the victim's medical records with his client; that they knew what parts of the records they would seek to introduce at trial; and that counsel made the decision to withdraw the motion only after consulting with Petitioner about that withdrawal.

The post-conviction court credited counsel's testimony that he had consulted with his client about the medical records over Petitioner's testimony that counsel had not reviewed or discussed the medical records with him. The trial court concluded that counsel's decision to withdraw the motion to continue had been made after thorough preparation and discussion with his client. The

---

[4] Petitioner's post-conviction brief on appeal does not raise issues involving the victim's altercation with his motion or his sexual encounter with another boy [Addendum 20 at 33-36, Petr.'s Post-Conviction Appeal Br.]. The failure to offer these specific claims to the TCCA results in a procedural default and, absent any allegation of cause and prejudice, forecloses federal review of these particular claims of ineffective assistance of counsel.

TCCA found no reason to disagree with the trial court's conclusions.

The TCCA then addressed whether any prejudice had ensued from counsel's decision to withdraw the motion to continue. The TCCA pointed to Petitioner's assertion that counsel's lack of recall of parts of the records demonstrated the necessity for extra time to review those records. For example, counsel did not remember a comment supposedly made by Petitioner; some hand-drawn pictures by Petitioner; and a reference to a "clinical narrative" containing a counselor's opinion that the victim's father did not believe that his son's history of abuse contributed to his son's present behavioral problems. The TCCA noted that there was no meaningful development at the post-conviction hearing of the comments and pictures and that it was unable to perceive how this evidence would have been relevant or admissible at trial. Concluding that Petitioner had not shown any resulting prejudice from counsel's withdrawal of motion to continue, the TCCA denied relief on the claim.

The TCCA also discussed Petitioner's claim that "counsel was unprepared with other discovery material," specifically addressing counsel's failure to use a police report containing the victim's and the victim's mother's initial statement to the police. *Hegel*, 2014 WL 2106703, at *7. Petitioner suggested that the police report could have been used to impeach the testifying officer during cross-examination. The TCCA observed that counsel only became aware that he had the report on the day of trial and that, after reviewing it, counsel did not use it during cross-examination. The TCCA pointed to counsel's testimony at the post-conviction hearing as suggesting that his choice not to use the police report was a tactical decision aimed at limiting additional testimony involving allegations of abuse that were not included in the indictment or in Petitioner's confession. The TCCA concluded that the record supported that counsel's decision not to use the report was tactical, that the decision was not based on inadequate preparation, and

11

that it was entitled to deference. The TCCA did not grant relief on this claim either.

Petitioner has presented nothing to show that the TCCA unreasonably determined the merits of the claim in its entirety. Indeed, the decisions to withdraw the motion to continue and not to use the police report to impeach a witness are prime examples of strategic decisions. According to the Supreme Court, strategic decisions are especially onerous for a petitioner to attack. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."). Moreover, "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001); *see Harrington*, 526 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

In any event, given the presumption that counsel's challenged conduct must be considered sound trial strategy, as well as the difficulty encountered by a petitioner in challenging counsel's tactical decisions, the Court finds that Petitioner has not established that the TCCA's rejection of this whole claim was an unreasonable application of *Strickland*. *Hanna v. Ishee*, 694 F.3d 596, 612 (6th Cir. 2012) ("The burden rests on the [petitioner] to overcome the presumption that the challenged conduct might be considered sound trial strategy.") (citing *Strickland*, 466 U.S. at 689).

Petitioner is entitled to no relief on his first ineffective assistance claim.

### ii. Jury Review of the Transcript (Claim 8)

Petitioner maintains that a transcript of his recorded telephone conversation with the victim was provided to the jury during its deliberations, without any objection by counsel [Doc. 1 at 14]. The trial court explained at that time that it has always sent such transcripts back to the jury because they were not evidence. Petitioner contends that the transcript had not been introduced into

evidence and that counsel's failure to object amounted to ineffective assistance.

During the evidentiary hearing on collateral relief, the post-conviction court agreed that the submission of the transcript to the jury during its deliberations was error but found that Petitioner had not established that the error prejudiced him. There was no prejudice, so explained the post-conviction court, because the recording of the phone conversation had been played in open court; each jury member had been furnished a copy of the transcript for use during the trial; limiting instructions on the use of transcripts had been given to the jury; and Petitioner had confessed to penile penetration of the victim and had been convicted of child rape.

The TCCA agreed with the finding of error in permitting the transcripts to go to the jury and it further agreed with the finding of no prejudice flowing therefrom. The TCCA cited to a state court case that had held that no prejudice occurs when a jury is given a transcript that has not been admitted into evidence, where the transcript is made an exhibit at trial and played for a jury. The TCCA reasoned that, in Petitioner's case, the jury repeatedly had been instructed that "the tape is evidence" and the transcript "is only a guide that may or may not assist you." *Hegel*, 2014 2106703, at *8. The TCCA recognized that a jury is presumed to follow its instructions and pointed to counsel's testimony that any inconsistencies between the transcript and the recording were "slight" and that he had not found errors that would have benefited Petitioner. *Id.*, 2014 2106703, at *8. The TCCA ruled that, in view of the entire record, no prejudice ensued from any alleged deficient performance related to the transcript.

To prevail on this claim, Petitioner must show that the TCCA's application of *Strickland* was not reasonable. Petitioner can make such a showing by pointing to a well-established rule in a Supreme Court case holding that, contrary to what the state court found, submission of a transcript of an unadmitted recording to the jury, under circumstances substantially similar to those

13

in Petitioner's case, resulted in prejudice. Petitioner has not made this showing, and it is doubtful that he could do so. *See Payton v. United States*, No. 17-1123, 2017 WL 7342064, at *2 (6th Cir. Aug. 15, 2017) (no ineffective assistance stemming from jury's use of unadmitted transcripts during deliberations where no inaccuracies in transcript identified and where jury is instructed "that the recording—not the transcript—was the evidence it should consider"); *see also United States v. Holton*, 116 F.3d 1536, 1542 (D.C. Cir. 1997) ("Our survey of the practices of other circuits indicates that permissible procedures [under federal law] regarding transcripts vary widely. Some circuits have permitted transcripts to be brought into deliberations without requiring that they be formally admitted into evidence."). Petitioner, thereby, has failed to demonstrate that the TCCA's adjudication of his claim "was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U. S. at 103.

The writ of habeas corpus will not issue with respect to Petitioner's second ineffective assistance claim.

### iii. Motion for a New Trial (Claim 9)

Petitioner's last claim in this category is that counsel filed a motion for a new trial without consulting with him and that counsel included grounds for appeal that were not fleshed out with facts [Doc. 1 at 15]. For example, the motion for a new trial did not include issues involving the potential for accomplice testimony and necessary corroboration, the victim's belatedly disclosed medical records and the concomitant need for a continuance of the trial to review the records, and the improper admission into evidence of a coerced confession. Furthermore, in preparing the motion for a new trial, counsel used a form motion that contained limited grounds and did not amend the motion to add new grounds during the four months he could have so done. In addition, counsel did not inform Petitioner as to the grounds for a motion for a new trial and he made a

14

limited argument at the hearing on the motion.

Petitioner presented this claim to the TCCA, specifically arguing that counsel's failure to raise in the motion for a new trial issues involving the need for a continuance and the introduction of his confession "prejudiced his defense by 'severely limit[ing]' the grounds that could be raised on appeal." *Hegel*, 2014 WL 2106703, at *9. The TCCA pointed out that where, as in Petitioner's case, counsel files a motion for a new trial but omits certain issues, a petitioner must prove "actual prejudice" to prevail on the claim of ineffective assistance. *Id.*, 2014 WL 2106703, at 9.

Observing that Petitioner had not offered testimony or evidence to support his assertion that the admission of his confession was error, the TCCA iterated that the post-conviction court had found, after reviewing the transcript of the suppression hearing, that the admission of Petitioner's confession had been proper. As to the motion-to-continue issue, the TCCA found nothing in the record to suggest that the motion had been denied improperly; rather, the TCCA found that the record contained testimony by counsel and Petitioner that the motion had been withdrawn voluntarily prior to trial. The TCCA denied relief on this final ineffective assistance claim due to the lack of a showing of prejudice resulting from any alleged deficient performance on counsel's part.

Petitioner has not provided the Court with a governing Supreme Court case or evidence to show that the TCCA's disposition of the claim involving the motion for a new trial was contrary to or an unreasonable application of well-established Supreme Court precedent. As the Supreme Court has instructed, "[s]urmounting *Strickland's* high bar is never an easy task," and the task is made "all the more difficult" when § 2254(d) applies. *Harrington*, 562 U.S. at 105. The Court now finds that the state court's application of *Strickland* was not unreasonable and that its decision was not based on an unreasonable factual determination.

No writ will issue with respect to this claim.

### 3. Non-Cognizable Claim (Claim "III")

Petitioner maintains in his last claim that the trial court erred in imposing consecutive sentences for his child rape and incest convictions [Doc. 1 at 30-34]. Petitioner argues that he was a Range one, standard offender, and that, pursuant to the state law under which he was sentenced, consecutive sentences can only be imposed if the nature of the sexual abuse is severe and the acts comprising the sexual improprieties occurred over long periods. Petitioner argues that in state cases upholding consecutive sentences, the sexual abuse has been much worse than the act that led to his convictions; that the incest conviction stemmed solely from the child rape conviction, meaning that he was convicted only of one act of sexual abuse; and that the sexual abuse in his case allegedly occurred in a single month [*Id.* at 31-32].

The TCCA entertained this claim during Petitioner's direct appeal and concluded that, under Tennessee law, the trial court had not abused its discretion by ordering Petitioner's sentences to be served consecutively. *Hegel*, 2011 WL 3198188, at *11-14.

The Supreme Court teaches that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, the TCCA's interpretation and application of Tennessee sentencing law is not a cognizable matter in a federal habeas corpus proceeding. *Pudelski v. Wilson*, 576 F.3d 595, 610-611 (6th Cir. 2009) ("State law issues are not subject to habeas review. . . .") (citing *Estelle*, 502 U.S. at 67-68); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding that a federal writ of habeas corpus may not be issued "on the basis of a perceived error of state law").

Because this claim is not cognizable in these proceedings, Petitioner "has failed to state a claim upon which habeas relief can be granted." *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir.

2000) (citing *Pulley*, 465 U.S. at 41).

## IV.  CONCLUSION

For the above reasons, this pro se state prisoner's § 2254 application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V.  CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484.

After having reviewed each claim individually and in view of the firm procedural basis upon which is based the dismissal of certain claims and the law upon which is based the dismissal on the merits of other claims, reasonable jurists would debate neither the correctness of the Court's procedural rulings nor its assessment of the claims. *Id*. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

**AN APPROPRIATE ORDER WILL ENTER**.

ENTER:

s/ Leon Jordan
United States District Judge